**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NORMAN ALEXANDER<br>119 Knollwood Dr<br>Lancaster, PA 17601 | CIVIL ACTION |
| | |
| Plaintiff, | CASE NO.: |
| v. | |
| | |
| WEAVER SUPERIOR WALLS, LLC<br>864 E. Main Street<br>Ephrata, PA 17522 | **JURY TRIAL DEMANDED** |
| | |
| Defendant. | |

## CIVIL ACTION COMPLAINT

Norman Alexander (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    This action has been initiated by Plaintiff against Weaver Superior Walls, LLC (hereinafter referred to as "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").

2.    Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

3.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under Title VII and Section 1981. There lies supplemental

and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

4. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

5. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit under Title VII within 90 days of receiving a right-to-sue letter from the EEOC.

7. Plaintiff properly exhausted his administrative remedies as to his PHRA claims by dual-filing a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and waiting at least one year since the filing before asserting his PHRA claim.

## PARTIES

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is an adult individual, with an address as set forth in the caption.

10. Defendant is a Pennsylvania-based company that specializes in manufacturing and installing prefabricated concrete walls for use in commercial and residential construction.

11. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff is a Black (African American) male.

14. Defendant hired Plaintiff on or about March 6, 2023, as a full-time Concrete Finisher on the Pour Crew.

15. Plaintiff was employed with Defendant in the same aforesaid position for approximately 1 year and 8 months until his unlawful termination on or about November 21, 2024.

16. As a Concrete Finisher, Plaintiff's duties included pouring, casting, shaping, and texturing concrete walls.

17. Plaintiff was also sometimes required to perform leadership duties, including but not limited to finalizing the walls his team produced and ensuring that the production area was clean between productions; however, Plaintiff was never promoted to a leadership position, nor paid as a crew leader.

18. Plaintiff was directly supervised by, and reported to, the Building Specialist/Production Foreman, Ryan Lenzi ("Lenzi" - Caucasian).

19.     At all relevant times herein, the Human Resources ("HR") Manager was Melissa Hammer ("Hammer" – Caucasian).

20.     During the beginning of Plaintiff's employment, Lenzi reported to the Production Manager, John Herbein ("Herbein").

21.     In or about July of 2024, Herbein separated from his employment with Defendant and Lenzi began reporting to Joshua Musser ("Musser").

22.     Herbein hired Plaintiff, gave him raises, and at times complimented Plaintiff's hard work, including praising Plaintiff for his attendance record.

23.     Upon information and belief, most of Defendant's work force was Caucasian or Hispanic, and Plaintiff was one of the very few Black employees employed by Defendant at the time of his unlawful termination.

24.     While Plaintiff was a dedicated and hard-working employee, his work environment was tainted by the sexual harassment and racial discrimination that he was subjected to by members of Defendant's management, including but not limited to Lenzi (as discussed further *infra*).

25.     Some of the sexual harassment and racial discrimination that Plaintiff was subjected to by Lenzi included but was not limited to:

    a. Unlike Plaintiff's non-Black counterparts, Lenzi did not refer to Plaintiff by name, and instead referred to him with insults such as "idiot," "dickhead," and "retard," as well as racially discriminatory terms such as "boy" and "little brownie;"

    b. Unlike his non-Black counterparts, Lenzi disparaged Plaintiff by calling him "a piece of shit" and stating that Plaintiff "won't amount to shit";

4

c.  Lenzi used the aforesaid comments to insult and alarm Plaintiff, which Plaintiff found very upsetting;

d.  Lenzi made sexually harassing comments and gestures towards Plaintiff, such as:

    i.  Telling Plaintiff to "suck [his] dick;"

    ii.  Slapping Plaintiff's rear end with items such as a piece of Styrofoam, a clipboard, or a rolled-up paper; and

    iii.  Gesturing to his privates and telling Plaintiff, "come on top of this thing and you won't come back the same," or "your ass wouldn't be the same" (implying what would happen to Plaintiff if Lenzi had anal sex with Plaintiff).

26.  In addition to the foregoing, Lenzi also ignored racially discriminatory and sexually harassing conduct by other employees towards Plaintiff. By way of example only:

    i.  In or about March 2024, while at lunch, Plaintiff said that he "had the 'itis'" (meaning that he was tired after eating). Another employee, Jeff Adams ("Adams"), responded "you mean the *nigga-itis*?" Adams shared this joke at Plaintiff's expense, which was obviously racially offensive, with Lenzi, and Lenzi did not take any disciplinary action against Adams for the same;

    ii.  Adams, like Lenzi, would also slap Plaintiff's rear end with objects as discussed *supra*, and Lenzi never stopped him or disciplined him; and

    iii.  Another employee named Wyatt (last name unknown, "Wyatt" - Caucasian) called Plaintiff a "nigga." Plaintiff reported Wyatt's racially

abusive language to Lenzi, who responded by simply telling Plaintiff to "shut the fuck up."

26. The aforementioned acts of discrimination and harassment are examples only and by no means an exhaustive list.

27. In addition to the foregoing sexual harassment by Lenzi and Adams, Plaintiff also suffered sexual harassment from Hammer in or about December 2023.

28. In or about December 2023, about the time of Defendant's Christmas party, Plaintiff was about to give Hammer a casual hug as a parting gesture when Hammer leaned towards him and kissed him on the lips.

29. Plaintiff objected to Hammer's conduct and asked whom he was supposed to report her to if she was responsible for employee complaints.

30. In response, Hammer laughed and said that she was the only one to whom he could make such a report; as a result, Plaintiff did not further escalate this act of sexual harassment.

31. Even though Plaintiff did not escalate his concern about Hammer's act of sexual harassment, he did complain about Lenzi on multiple occasions to multiple levels of Defendant's management, including:

    a. To Lenzi, by objecting to Lenzi's comments when he made them; however, each time Plaintiff complained to Lenzi, Lenzi would laugh and respond in a disrespectful manner, saying things including, but not limited to, "ok, retard";

    b. To Herbein, several times between 2023 and July 8, 2024; although Herbein attempted to discuss the matter with Lenzi, Defendant terminated Herbein about two weeks after July 8, 2024;

c. To Hammer; however, Hammer did not take any action and even informed Lenzi of Plaintiff's complaint, which caused Lenzi to retaliate against Plaintiff by yelling insults and profanities at him, telling Plaintiff not to "go above [his] head;" and

d. To Musser, including in or about February 2024 when Plaintiff provided Musser with specific details about Lenzi's sexually harassing and discriminatory conduct, including when it began and what Lenzi said.

32. During his complaint to Musser in February of 2024 (discussed *supra*), Plaintiff informed Musser that the sexual harassment and racial discriminatory treatment by Lenzi started prior to his [Musser's] hiring, believing that Musser would take Plaintiff's complaint seriously if he was made aware of how long Lenzi's conduct had been occurring, but to Plaintiff's shock, Musser dismissed Plaintiff's complaint outright, stating:

i. That there was nothing he (Musser) could do because Lenzi's conduct predated his tenure, suggesting that Plaintiff's only recourse was to complain to a prior manager; and

ii. That people are expected to joke around in a warehouse setting and that Plaintiff must "lighten up" or have "a thicker skin."

33. Thus, instead of investigating Lenzi, Musser simply placed the blame on Plaintiff for making the complaint.

34. In his last approximate 3-4 months, Plaintiff again directly told Lenzi at least 2 or 3 times that he did not appreciate his [Lenzi's] sexually harassing and discriminatory comments and asked Lenzi to call him by name only; however, Lenzi again dismissed Plaintiff's complaints and continued his pattern of sexually harassing and discriminatory behavior.

7

35. In or about July 2024, Plaintiff requested a transfer to the transportation department to escape the aforesaid hostile work environment.

36. Plaintiff made the transfer request to Lenzi, who responded that Plaintiff was not ready to transfer, that he had to "learn more shit" and that he would only be ready for a transfer when and if Lenzi said he would be.

37. Plaintiff also approached Musser and inquired about openings in the transportation department, but Musser stated that there were no openings.

38. Even after Plaintiff had complained to many levels of management and asked for a transfer, Defendant never launched an investigation into Lenzi's conduct nor took any meaningful action to eliminate the hostile work environment that Plaintiff was being subjected to (discussed *supra*).

39. Instead, Defendant subjected Plaintiff to retaliation, including but not limited to issuing him pretextual discipline in advance of his discriminatory/retaliatory termination.

40. Shortly before Plaintiff's termination, in or about November 2024, Plaintiff drove a new employee, Victor Aponte ("Aponte" - Hispanic), to work.

41. While in the car on the way to the worksite, Aponte indicated to Plaintiff that Lenzi had been calling Plaintiff "little black boy" around the workplace, and also that Adams had been engaging in similar racially discriminatory conduct against Plaintiff.

42. Defendant indicates in its position statement that, later, Aponte did not confirm to Adams what he had told Plaintiff about Lenzi and Adam's conduct. However, Defendant omits the facts that:

    a. Adams angrily confronted Aponte face-to-face about something Aponte had told Plaintiff he (Adams) did;

b. Adams has an intimidating presence and is known to possess a quick, violent temper;

c. Upon information and belief, Adams was at one time written up for throwing another employee against a concrete wall; and

d. Aponte, and any reasonable person, would have been under duress and unlikely to tell the truth when confronted by such a person in such a manner.

43. Plaintiff also expressed concerns about Lenzi's racially discriminatory language to other employees, such as Fabian (last name unknown, "Fabian" – Hispanic).

44. Fabian, without Plaintiff's consent, conveyed Plaintiff's concerns over being called "little black boy" to Lenzi, who once again retaliated.

45. Musser terminated Plaintiff's employment the day immediately after Plaintiff's conversation with Fabian.

46. According to Musser, Lenzi wanted Plaintiff to be terminated "on the spot," because Plaintiff was "spreading racist rumors" about being called "racist names."

47. Defendant, through Musser, thus admitted to terminating Plaintiff because of his complaints of discrimination.

48. Defendant alleges in its position statement that some of the write ups which ultimately led to Plaintiff's termination were issued for alleged verbal abuse towards other employees, but Defendant clearly tolerated far more serious offenses by non-Black employees without terminating them. By way of example:

a. As discussed *supra*, Wyatt and Adams had verbally (and in Adams' case, also physically) abused other employees, including Plaintiff, but were not terminated; and

     b.  Upon information and belief, Lenzi had been written up many times, but never terminated for verbal abuse towards other employees, including Plaintiff.

49.    Based on the foregoing, Plaintiff believes that he was subjected to a hostile work environment and ultimately terminated by Defendant for discriminatory and/or retaliatory reasons under federal and state law.

## COUNT I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Race Discrimination; [2] Hostile Work Environment; [3] Retaliation)

50.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51.    Plaintiff believes and avers that he was subjected to a hostile work environment because of his race and/or objections to racial discrimination.

52.    Plaintiff also believes and avers that his race was a motivating or determinative factor in Defendant's decisions to subject him to disciplinary action and terminate his employment.

53.    Plaintiff also believes and avers that Defendant subjected him to disciplinary action and terminated him in retaliation for objecting to/complaining about racial discrimination.

54.    The actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his objections to/complaints about racial discrimination constitute violations of Title VII.

## COUNT II
## Violations of 42 U.S.C. Section 1981 ("Section 1981")
### ([1] Race Discrimination; [2] Hostile Work Environment; [3] Retaliation)

55.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56.    Plaintiff believes and avers that he was subjected to a hostile work environment because of his race and/or objections to racial discrimination.

57.    Plaintiff also believes and avers that Defendant subjected him to discipline and terminated him because of his race and/or in retaliation for objecting to/complaining about racial discrimination.

58.    The actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his objections to racial discrimination constitute violations of Title VII.

## COUNT III
## Violations of Pennsylvania Human Relations Act ("PHRA")
### ([1] Race Discrimination; [2] Hostile Work Environment [3] Retaliation)

59.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60.    Plaintiff believes and avers that he was subjected to a hostile work environment because of his race and/or objections to racial discrimination.

61.    Plaintiff also believes and avers that his race was a motivating or determinative factor in Defendant's decisions to subject him to disciplinary action and terminate his employment.

62.    Plaintiff also believes and avers that Defendant subjected him to disciplinary action and terminated him in retaliation for objecting to/complaining about racial discrimination.

63.    The actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his objections to racial discrimination constitute violations of the PHRA.

11

**COUNT IV**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Sexual Harassment & [2] Retaliation)**

64. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65. Plaintiff was subjected to sexual harassment and complained about/objected to the same on multiple occasions to Defendant's management in advance of his termination.

66. Plaintiff's aforesaid complaints about/objections to the aforesaid sexual harassment were dismissed, never properly investigated and no remedial action was ever taken.

67. Instead, Plaintiff was retaliated against, issued pretextual discipline, and ultimately terminated.

68. Plaintiff believes and avers that Defendant issued him pretextual discipline and terminated him in retaliation for objecting to and/or complaining about sexual harassment.

69. Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of Title VII.

**COUNT V**
**Violations of Pennsylvania Human Relations Act ("PHRA")**
**([1] Sexual Harassment & [2] Retaliation)**

70. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

71. Plaintiff was subjected to sexual harassment and complained about/objected to the same on multiple occasions to Defendant's management in advance of his termination.

72. Plaintiff's aforesaid complaints about/objections to the aforesaid sexual harassment were dismissed, never properly investigated and no remedial action was ever taken.

12

73.     Instead, Plaintiff was retaliated against, issued pretextual discipline, and ultimately terminated.

74.     Plaintiff believes and avers that Defendant issued him pretextual discipline and terminated him in retaliation for objecting to and/or complaining about sexual harassment.

75.     Plaintiff asserts that Defendant's decisions (discussed *supra*) were made in violation of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

13

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 15, 2026

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Norman Alexander | : | CIVIL ACTION |
| v. | : | |
| Weaver Superior Walls, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)                    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| 7/15/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:    Defendants place of business

---

***RELATED CASE IF ANY:*** Case Number:_____    Judge:_____

1.  Does this case involve property included in an earlier numbered suit?    Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10.  Civil Rights
☐ 11.  Habeas Corpus
☐ 12.  Securities Cases
☐ 13.  Social Security Review Cases
☐ 14.  Qui Tam Cases
☐ 15.  Cases Seeking Systemic Relief **\*see certification below\***
☐ 16.  All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ALEXANDER, NORMAN | WEAVER SUPERIOR WALLS, LLC |

**(b)** County of Residence of First Listed Plaintiff    Lancaster
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Lancaster
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument |    Liability   [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel &      Pharmaceutical    Slander      Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'      Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability   [ ] 368 Asbestos Personal [ ] 340 Marine      Injury Product [ ] 345 Marine Product      Liability | | [ ] 835 Patent - Abbreviated New Drug Application [ ] 840 Trademark | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits |    Liability   **PERSONAL PROPERTY** [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract |    Product Liability   [ ] 380 Other Personal | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal      Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| [ ] 196 Franchise |    Injury   [ ] 385 Property Damage [ ] 362 Personal Injury -      Product Liability    Medical Malpractice | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) [ ] 864 SSID Title XVI | Exchange [ ] 890 Other Statutory Actions |
| **REAL PROPERTY**   **CIVIL RIGHTS**   **PRISONER PETITIONS** | | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation   [ ] 440 Other Civil Rights   **Habeas Corpus:** | | [ ] 791 Employee Retirement Income Security Act | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure   [ ] 441 Voting   [ ] 463 Alien Detainee | | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment   [X] 442 Employment   [ ] 510 Motions to Vacate | | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 240 Torts to Land   [ ] 443 Housing/      Sentence | | | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| [ ] 245 Tort Product Liability      Accommodations   [ ] 530 General | | | 26 USC 7609 | Agency Decision |
| [ ] 290 All Other Real Property   [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty      mployment    **Other:** | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
|   [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other      Other      [ ] 550 Civil Rights | [ ] 462 Naturalization Application [ ] 465 Other Immigration | | | |
|   [ ] 448 Education   [ ] 555 Prison Condition      [ ] 560 Civil Detainee -        Conditions of        Confinement | Actions | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   7/15/2026    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____